# CALDERON, WARDEN, ET AL. *v.* ASHMUS,
## INDIVIDUALLY AND ON BEHALF OF ALL
## OTHERS SIMILARLY SITUATED

No. 97–391.   Argued March 24, 1998—Decided May 26, 1998

REHNQUIST, C. J., delivered the opinion for a unanimous Court. BREYER, J., filed a concurring opinion, in which SOUTER, J., joined, *post*, p. 749.

*Ronald S. Matthias*, Supervising Deputy Attorney General of California, argued the cause for petitioners. With him on the briefs were *Daniel E. Lungren*, Attorney General, *pro se*, *George Williamson*, Chief Assistant Attorney General, and *Ronald A. Bass* and *Dane R. Gillette*, Senior Assistant Attorneys General.

*Michael Laurence* argued the cause for respondent. With him on the brief were *Gary D. Sowards* and *Jean R. Sternberg*.*

---

*A brief of *amici curiae* urging reversal was filed for the State of Maryland et al. by *J. Joseph Curran, Jr.*, Attorney General of Maryland, and *Andrew H. Baida* and *David P. Kennedy*, Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Grant Woods* of Arizona, *Gale A. Norton* of Colorado, *John M. Bailey* of Connecticut, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *Margery S. Bron-*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Chapter 154 of 28 U. S. C., part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2261 *et seq.* (1994 ed., Supp. II), provides certain procedural advantages to qualifying States in federal habeas proceedings. This case requires us to decide whether state death-row inmates may sue state officials for declaratory and injunctive relief limited to determining whether California qualifies under Chapter 154.

Chapter 154 revises procedural rules for federal habeas proceedings in capital cases. Most notably, it provides for an expedited review process in proceedings brought against qualifying States. It imposes a 180-day limitation period for filing a federal habeas petition. § 2263(a). It treats an untimely petition as a successive petition for purposes of obtaining a stay of execution, § 2262(c), and it allows a prisoner to amend a petition after an answer is filed only where the prisoner meets the requirements for a successive petition, § 2266(b)(3)(B). Chapter 154 also obligates a federal district court to render a final judgment on any petition within 180 days of its filing, and a court of appeals to render a final determination within 120 days of the briefing. §§ 2266(a) and (c).

As a general rule, Chapter 153—which has a 1-year filing period, § 2244(d)(1), and lacks expedited review procedures—

---

ster of Hawaii, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Jeffrey A. Modisett* of Indiana, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *Michael C. Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Philip T. McLaughlin* of New Hampshire, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *John Knox Walkup* of Tennessee, *Dan Morales* of Texas, *Jan Graham* of Utah, *Richard Cullen* of Virginia, and *Tom Udall* of New Mexico.

governs federal habeas proceedings against a State. Chapter 154 will apply in capital cases only if the State meets certain conditions. A State must establish "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel" in state postconviction proceedings, and "must provide standards of competency for the appointment of such counsel." § 2261(b) (States with separate postconviction review proceedings); § 2265(a) (States with unitary review procedures).[1] The State must offer counsel to all capital defendants, and the state court must enter an order concerning appointment of counsel. §§ 2261(b), 2265(b). If a State meets these criteria, then it may invoke Chapter 154.

Various California officials, including petitioner Attorney General Lungren, publicly indicated that they thought California qualified under Chapter 154 and that they intended to invoke the chapter's protections. Respondent Troy Ashmus, a state prisoner sentenced to death, filed a class-action suit against petitioners. The class, which included all capital prisoners in California whose convictions were affirmed on direct appeal after June 6, 1989, sought declaratory and injunctive relief to resolve uncertainty over whether Chapter 154 applied.

The District Court issued a declaratory judgment holding that California does not presently qualify for Chapter 154 and that Chapter 154 therefore does not apply to any class members. It also issued a preliminary injunction enjoining petitioners from "trying or seeking to obtain for the State of California the benefits of the provisions of Chapter 154 . . . in any state or federal proceedings involving any class member." 935 F. Supp. 1048, 1076 (ND Cal. 1996).

---

[1] It is undisputed here that California is a unitary review State, which is a State that allows prisoners to raise collateral challenges in the course of direct review of the judgment, such that all claims may be raised in a single state appeal. See 28 U. S. C. § 2265(a) (1994 ed., Supp. II).

The Court of Appeals for the Ninth Circuit affirmed. 123 F. 3d 1199 (1997). As a threshold matter, the Court of Appeals rejected petitioners' claim that the Eleventh Amendment barred respondent's suit as one against the State. The court concluded that the case falls within the *Ex parte Young* exception to Eleventh Amendment immunity, *Ex parte Young*, 209 U. S. 123 (1908), because respondent sufficiently alleged a continuing violation of federal law. 123 F. 3d, at 1204–1206. California's announced intention to invoke Chapter 154, without having complied with its requirements, threatened to violate the class members' right to thorough federal review of their first habeas petitions, pursuant to Chapter 153, and their right to assistance of counsel in federal habeas proceedings, pursuant to 21 U. S. C. § 848(q). By stating its intention to invoke Chapter 154, the Court of Appeals reasoned, California forced inmates to make an unacceptable choice: filing a *pro se* petition within 180 days in order to ensure compliance with Chapter 154, which may fail to raise substantial claims, or waiting until counsel is appointed, which may miss the 180-day filing deadline if Chapter 154 applies. 123 F. 3d, at 1204–1205.

The Court of Appeals also determined that the District Court had authority to issue a declaratory judgment under 28 U. S. C. § 2201(a). 123 F. 3d, at 1206–1207. It noted that a declaratory judgment plaintiff need only demonstrate an independent basis of federal jurisdiction and an actual case or controversy. *Id.*, at 1206. The District Court had federal question jurisdiction under 28 U. S. C. § 1331 because the case challenged the interpretation of a federal Act. And the case-or-controversy requirement was satisfied, the court concluded, because "the State's threats to invoke Chapter 154 will significantly affect the plaintiff-class's ability to obtain habeas corpus review by a federal court." 123 F. 3d, at 1207.

The Court of Appeals agreed in large part with the District Court's conclusion that California does not qualify, and

therefore found Chapter 154 inapplicable. In affirming the grant of injunctive relief, the Court of Appeals rejected petitioners' contention that enjoining their advocacy of a particular legal position violates the First Amendment. It thought the injunction did not interfere with the state officials' rights since they were free to voice their opinion that the decision was wrong—only not in court in order to invoke the benefits of Chapter 154. *Id.*, at 1207–1209.

Petitioners sought review in this Court. We granted certiorari on both the Eleventh Amendment and the First Amendment issues, 522 U. S. 1011 (1997), but in keeping with our precedents, have decided that we must first address whether this action for a declaratory judgment is the sort of "Article III" "case or controversy" to which federal courts are limited. See, *e. g., FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 230–231 (1990).[2]

Before the enactment of the federal Declaratory Judgment Act, this Court expressed the view that a "declaratory judgment" was not within that jurisdiction. *Willing* v. *Chicago Auditorium Assn.*, 277 U. S. 274, 289 (1928). But in *Nashville, C. & St. L. R. Co.* v. *Wallace*, 288 U. S. 249 (1933), the Court held that it did have jurisdiction to review a declaratory judgment granted by a state court. And in *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227 (1937), we decided that the federal Declaratory Judgment Act validly conferred jurisdiction on federal courts to issue declaratory judgments in appropriate cases.

That Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any inter-

---

[2] While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III. See *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U. S. 261, 267 (1997); *Patsy* v. *Board of Regents of Fla.*, 457 U. S. 496, 515, n. 19 (1982).

ested party seeking such declaration, whether or not further relief is or could be sought." 28 U. S. C. § 2201. See also Fed. Rule Civ. Proc. 57. Thus, in *Aetna Life Ins.*, we held that an insurance company could bring a declaratory judgment action to determine the validity of insurance policies. The company and the insured disputed whether the policies had lapsed and how much was currently payable, but the insured had not brought suit to recover benefits. 300 U. S., at 239–240. We observed that the controversy would admit "of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*, at 241. See also *Wallace, supra*, at 262. We have thus recognized the potential for declaratory judgment suits to fall outside the constitutional definition of a "case" in Article III: a claim " 'brought before the court(s) for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs.' " *Fairchild* v. *Hughes*, 258 U. S. 126, 129 (1922).

The underlying "controversy" between petitioners and respondent is whether respondent is entitled to federal habeas relief setting aside his sentence or conviction obtained in the California courts. But no such final or conclusive determination was sought in this action. Instead, respondent carved out of that claim only the question whether, when he sought habeas relief, California would be governed by Chapter 153 or by Chapter 154 in defending the action. Had he brought a habeas action itself, he undoubtedly would have obtained such a determination, but he seeks to have that question determined in anticipation of seeking habeas so that he will be better able to know, for example, the time limits that govern the habeas action.

We think previous decisions of this Court bar the use of the Declaratory Judgment Act for this purpose. In *Coffman* v. *Breeze Corps.*, 323 U. S. 316 (1945), a patent owner brought suit seeking to have the Royalty Adjustment Act

declared unconstitutional and to enjoin his licensee from paying accrued royalties to the government. The Court held that the action presented no case or controversy. The validity of the Act would properly arise only in a suit by the patent holder to recover the royalties, which could afford complete and adequate relief. In such a suit, if the licensee were to assert compliance with the Act as a defense to an obligation to pay the amounts due, the patent holder's right of recovery would then depend on a determination of the Act's validity. *Id.*, at 322–323. The Court thus concluded that there was no justiciable question "unless and until [the patent owner] seeks recovery of the royalties, and then only if [the licensee] relies on the Act as a defense." *Id.*, at 324. See also *Public Serv. Comm'n of Utah* v. *Wycoff Co.*, 344 U. S. 237, 245–246 (1952).

As in *Coffman*, respondent here seeks a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding. Such a suit does not merely allow the resolution of a "case or controversy" in an alternative format, as in *Aetna Life Ins., supra,* but rather attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense, see *Coffman, supra,* at 322–324; *Wycoff Co., supra,* at 245–246. The "case or controversy" actually at stake is the class members' claims in their individual habeas proceedings. Any judgment in this action thus would not resolve the entire case or controversy as to any one of them, but would merely determine a collateral legal issue governing certain aspects of their pending or future suits.

The disruptive effects of an action such as this are peculiarly great when the underlying claim must be adjudicated in a federal habeas proceeding. For we have held that any claim by a prisoner attacking the validity or duration of his confinement must be brought under the habeas sections of Title 28 of the United States Code. *Preiser* v. *Rodriguez*, 411 U. S. 475, 500 (1973). As that opinion pointed out, this means that a state prisoner is required to exhaust state rem-

edies before bringing his claim to a federal court. *Id.*, at 489–491. But if respondent Ashmus is allowed to maintain the present action, he would obtain a declaration as to the applicable statute of limitations in a federal habeas action without ever having shown that he has exhausted state remedies. This aberration illustrates the need, emphasized in *Coffman* and *Wycoff*, to prevent federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution.

If the class members file habeas petitions, and the State asserts Chapter 154, the members obviously can litigate California's compliance with Chapter 154 at that time.[3] Any risk associated with resolving the question in habeas, rather than a pre-emptive suit, is no different from risks associated with choices commonly faced by litigants.

When asked at oral argument what authority existed for allowing a declaratory judgment suit on an anticipated defense, respondent replied that *Steffel* v. *Thompson*, 415 U. S. 452 (1974), allows a declaratory judgment action to prevent interference with federal rights. See also Brief for Respondent 16. Although acknowledging that *Steffel* involved a continuing threat of arrest in violation of the First Amendment, respondent argued that the Court's decision did not distinguish types of threats. Here, according to respondent, the State's "threat" to assert Chapter 154 in habeas proceedings and the risk that the class members will thereby lose

---

[3] Respondent conceded this point in earlier briefings. Brief in Opposition 7. Respondent now contends, however, that habeas proceedings will not provide an effective remedy because the class members still will be put in the file-or-default dilemma and because a decision in one case will not relieve the other members of their continuing uncertainty. Brief for Respondent 35–36. But as explained, *supra*, at 747, the dilemma the class members face does not establish a case in the constitutional sense. And the inability to bind the government as to the whole class does not affect that determination.

their rights to application of Chapter 153 are sufficient to establish federal court jurisdiction.

*Steffel,* however, falls within the traditional scope of declaratory judgment actions because it completely resolved a concrete controversy susceptible to conclusive judicial determination. In *Steffel,* protesters had twice been told they would be arrested for handbilling in front of a shopping center, and the plaintiff's companion had in fact been arrested after disregarding instructions to leave. *Id.,* at 455–456. The imminent threat of state criminal prosecution and the consequent deterrence of the plaintiff's exercise of constitutionally protected rights established a case or controversy. *Id.,* at 459. That controversy could have been completely resolved by the declaratory judgment sought by the plaintiff. *Id.,* at 460–462.

The differences between this case and *Steffel* are several. Here, California's assertions on Chapter 154 have no coercive impact on the legal rights or obligations of either party. It is the members of the class, and not the State, who anticipate filing lawsuits. Those habeas actions would challenge the validity of their state court convictions and sentences; the State will oppose such challenges. The present declaratory judgment action would not completely resolve those challenges, but would simply carve out one issue in the dispute for separate adjudication.

We conclude that this action for a declaratory judgment and injunctive relief is not a justiciable case within the meaning of Article III. The judgment of the Court of Appeals accordingly is reversed, and the case is remanded with instructions that respondent's complaint be dismissed.

*It is so ordered.*

JUSTICE BREYER, with whom JUSTICE SOUTER joins, concurring.

The Court says that "[respondent class members] can litigate California's compliance with Chapter 154" when they

"file habeas petitions." *Ante*, at 748. In light of the Court of Appeals' concern, echoed by respondent class members, that without declaratory relief, they would be placed in an untenable remedial "dilemma," Brief for Respondent 16–17, 35–37; 123 F. 3d 1199, 1205 (CA9 1997), I would add that it should prove possible for at least some habeas petitioners to obtain a relatively expeditious judicial answer to the Chapter 154 compliance question and thereby provide legal guidance for others. That is because, in at least some cases, whether a petitioner can or cannot amend, say, a "bare bones" habeas petition (filed within 180 days) will likely depend upon whether California does, or does not, qualify as an "opt-in" State. Compare 28 U. S. C. § 2242 (ordinary amendment rules); § 2254 Rule 11 (rules of civil procedure applicable to federal habeas petitions); 1 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 17.2 (2d ed. 1994 and Supp. 1997) (Federal Rule of Civil Procedure 15's liberal standard for amendment applies to habeas petitions in States not eligible for Chapter 154); with 28 U. S. C. § 2266(b)(3)(B) (1994 ed., Supp. II) (setting forth strict standard for amendment applicable where State falls within Chapter 154). And a district court's determination that turned on the legal answer to that question might well qualify for interlocutory appeal. See 28 U. S. C. § 1292(b) (permitting certification, and hence interlocutory appeal, of certain district court determinations). With this understanding, I join the Court's opinion.