PATRICK E. HIGGINBOTHAM, Circuit Judge,
concurring:
I concur in the judgment reversing and remanding for entry of an order of dismissal for lack of standing. I do not concur in the treatment of Ex parte Young. The majority opinion[1] reexamines the underpinnings of Ex parte Young[2] to support its conclusion that injunctive relief is not available here and hence the claim is barred by the Eleventh Amendment. Despite the majority’s careful work, I am persuaded that this effort should not have been undertaken.
This appeal can and should be resolved by a direct and simple proposition: there is no case or controversy. Enjoining the named defendants from enforcing the statute will not redress the claimed wrongs. There is then no case or controversy under Article III of the Constitution.[3]
*430 I
The question of standing — case or controversy — is logically anterior to the question of whether there is a defense to the claim; it goes to the court’s jurisdiction and cannot be waived by the parties or conferred by agreement. The Eleventh Amendment is also jurisdictional, but it is jurisdiction in an anomalous form. It is a defense that may be invoked by the state — but need not be.
Logic is not alone in pushing the case- or-controversy inquiry to the forefront.[4] Questions of standing and redressability are familiar. The burden of a plaintiff to plead and prove standing at each stage of the proceeding is settled.[5] Stepping over this threshold inquiry to address at the outset of the suit the defense of Eleventh Amendment immunity risks confusion.[6]
In Calderon v. Ashmus,[7] the Supreme Court recognized this risk, insisting that standing be found before considering a state’s immunity under the Eleventh Amendment. It explained that before addressing an Eleventh Amendment claim, “we must first address whether this action for a declaratory judgment is the sort of ‘Article III’ ‘case or controversy’ to which federal courts are limited.”[8] Whether the court was expressing a rule of sequence across cases or explaining the practical compulsion in the case before it is not wholly certain. At the least, similar concerns inform my hesitation here.[9]
The question of standing in this case is easily framed. We should ask whether enjoining defendants from enforcing the statute complained of will bar its application to these plaintiffs. The answer is no. I am persuaded that the sued defendants have no such responsibility for enforcing the statute. Whether that is so ought to be the beginning and the end of this appeal. The majority acknowledges this reality but only after a long visit with the doctrine of Ex parte Young.
There is another powerful argument that Eleventh Amendment immunity ought not be treated in this case. The majority reasons that the injunction exception to the Eleventh Amendment offered by Ex parte Young is not available because the injunction is against officials with no enforcement power; that with the wrong officials sued the action is against the State. But “official-capacity actions for prospective relief are not treated as actions against the State.”[10] The Governor and *431 Attorney General were sued in their official capacities for injunctive relief. That they are the wrong officials does not alter the relief sought. Rather, the flaw (ignoring for the moment the absence of standing) is that if the suit is against the wrong officials, no claim for injunctive relief has been stated.
II
The majority and the dissent trade arguments over “the nexus between defendants and the statute at issue.” If this is the same inquiry as standing, as it appears to be, we should be applying the doctrine of standing. Specifically, unless nexus as deployed by the majority has something to say to cases that meet the standing inquiry, it has no independent utility. Treating the requisites of standing as requirements internal to Ex parte Young is confusing, in part, because it does not necessarily simultaneously answer the standing question. After all, a plaintiff may have requested injunctive relief from defendants with responsibility for enforcing a law they challenge, but is unable to plead and prove individuated injury.
III
Standing developed long after Ex parte Young, responding to the stress expanding public law litigation brought to the respective roles of Article III courts, the Congress, the Executive, and the states. It is more than adequate to its task of vindicating these principles of federalism and separation of powers.
Judge Benavides’ opinion would find standing under the Declaratory Judgment Act.[11] This approach has three problems, in ascending order of difficulty. First, whether the district court in this case granted declaratory relief is uncertain. The court granted a preliminary injunction, questioning the constitutionality of the challenged statute in the course of finding that there was a substantial likelihood of success on the merits. The parties then agreed to convert the preliminary injunction into a permanent injunction. At best, any “declaratory relief’ is only that, a conclusion implicit in the grant of injunc-tive relief. Perhaps this would be a sufficient declaration, but there are larger difficulties.
Second, although the Declaratory Judgment Act “brings to the present a litigable controversy, which otherwise might only be tried in the future,”[12] it does not jettison traditional standing requirements.[13] The requirements of causation and re-dressability are not met here. Lack of standing disposes of this case regardless of the relief sought — injunctive or declaratory. The defendants could not threaten enforcement of the targeted state law; they lack the authority to do so. If plaintiffs attempted to sue defendants in their official capacity, acting on an assumption that although lacking enforcement power they are obligated to defend the statute in the abstract, the requisite concreteness of engagement is absent. This is so even if, contrary to my view, declaratory relief is seen as here meeting the redressability requirement of Article III.
Third, this case could not proceed even if case or controversy difficulties were somehow met — -if the Governor and Attorney General were seen as proper defendants to a claim seeking declaratory relief, *432 even though coercive relief against them could not be granted. This is because Congress did not and could not have created a generic exception to the Eleventh Amendment for declaratory relief.
IV
Some have viewed Ex -parte Young as the culprit, the cause of these changes in the public law model of cases. More to the point, some apparently see the doctrine articulated therein as a threat to the sovereign role of states that must be tamed. I do not share these views and fear that imposing this additional duty upon Ex parte Young by bringing it forward, to the front of the case or controversy inquiry, pushes the doctrine toward an amorphous, case-by-case inquiry into its availability — a destination affirmatively rejected by seven members of the United States Supreme Court.[14] I do not suggest that the majority does so here. Rather, my concern is where the path it has selected can lead.
V
Implicit in my resistance to the majority’s approach is my view that Ex parte Young poses no threat to the Eleventh Amendment or to the fundamental tenets of federalism. To the contrary, it is a powerful implementation of federalism necessary to the Supremacy Clause, a stellar companion to Marburg[15] and Martin v. Hunter’s Lessee.[16]
We should wait for the case in which plaintiffs have standing, where there is a case or controversy, before examining whether the principles of Ex parte Young have been unduly expanded. Since such relief can never be granted absent a case or controversy, the destination of the majority’s trek today is inevitably a narrowing of the doctrine of Ex parte Young, rendering it either less than it has always been or an exact replication of standing doctrine. I decline passage on that voyage. I decline because I am persuaded that familiar principles of standing are better suited to answer these questions with less risk to the vital role of Ex parte Young.
VI
The desire to drive a stake through the heart of the panel majority’s views of Ex parte Young is understandable. The panel’s flawed analysis offered a tempting target, enough that the en banc majority’s lengthy effort to erase its memory here is not without some justification. But it pursues a ghost. The panel opinion no longer exists. It was vacated by the order granting en banc review. The order granting en banc left no remains to be buried and doing so implies the need to do so, itself not the best course, to my eyes.

. I refer to the "majority” opinion because it has a clear majority in support of its treatment of standing. The opinion’s treatment of Ex parte Young and the Eleventh Amendment is not supported by a majority of the court.

. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 568, 570-71, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("The most obvious problem in the present case is redressability.... The short of the matter is that redress of the only injury in fact respondents complain of requires action ... by the individual funding agencies; and any relief ... against the Secretary was not likely to produce that action.”).

. The Supreme Court recently reaffirmed that a federal court should usually address subject matter jurisdiction before personal jurisdiction in removal cases, unless personal jurisdiction is easily resolved and determining subject-matter jurisdiction is difficult. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587-88, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). The majority’s approach is in tension with the principles of restraint underlying Ruhrgas. It repairs to the fundamentals of Ex parte Young instead of relying on a straightforward application of subject matter jurisdiction. As I explain, the Supreme Court in Calderon v. Ashmus, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998), has addressed the sequence for standing and Eleventh Amendment issues. See infra.

. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.

. I recognize that some courts have addressed the application of Ex Parte Young without first considering standing. These cases, however, tend to involve an unusual procedural posture in which the court finds it inappropriate to review standing. See, e.g., Summit Medical Assoc. v. Pryor, 180 F.3d 1326, 1334-36 (11th Cir.1999) (finding review of standing during interlocutory appeal of denial of Eleventh Amendment immunity to be unavailable under collateral order doctrine or pendent appellate jurisdiction doctrine).

. 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).

. Id. at 745, 118 S.Ct. 1694 (emphasis added).

. In Calderon, the Supreme Court overruled the Ninth Circuit, which had treated the Eleventh Amendment issue as a threshold inquiry. The Ninth Circuit addressed the Article III standing question only after it had decided the Eleventh Amendment issue. See Ashmus v. Calderon, 123 F.3d 1199, 1204-07 (9th Cir.1997).

. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), quoting Kentucky v. Graham, 473 *431 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); see also Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

. See 28 U.S.C. § 2201(a).

. Societe de Conditionnement En Aluminium v. Hunter Eng’g Co., 655 F.2d 938, 943 (9th Cir.1981).

.See Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir.1997) (Wisdom, J.) (noting that the "actual controversy” required under 28 U.S.C. § 2201(a) “is identical to the meaning of 'case or controversy' for the purposes of Article IIF’).

.See Idaho v. Coeur d’Alene Tribe, 521 U.S. 261, 288, 291, 117 S.Ct 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring) ("[T]he principal opinion reasons that federal courts determining whether to exercise jurisdiction over any suit against a state officer must engage in a case-specific analysis of a number of concerns.... This approach unnecessarily recharacterizes and narrows much of our Young jurisprudence.”); id. at 297, 117 S.Ct. 2028 (Souter, J., dissenting) ("The principal opinion would redefine the [Young ] doctrine, from a rule recognizing federal jurisdiction to enjoin state officers from violating federal law to a principle of equitable discretion as much at odds with Young's result as with the foundational doctrine on which Young rests.”). The attempt in the principal opinion to frame Young in terms of case-by-case analysis, id. at 270-80, 117 S.Ct. 2028 (Kennedy, J.), was joined only by the Chief Justice.

. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60(1803).

. 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816).