*398 KING, Circuit Judge,
dissenting.
The majority today addresses complex issues regarding the possible preemptive effect of the Gramm-Leach-Bliley Act (the “GLBA”) on state regulation of the insurance industry. To reach these issues, the majority[6] reviews an advisory opinion of the Office of the Comptroller of the Currency (the “OCC”), which suggests that GLBA preempts certain provisions of West Virginia law. In reviewing a nonbinding OCC opinion, however, my good colleagues run afoul of the case or controversy mandate of Article III of the Constitution.[7] Because we lack jurisdiction to render a decision under these circumstances, I respectfully dissent.
I.
On May 8, 2000, the West Virginia Bankers Association (the ‘WVBA”) sought an opinion from the OCC that GLBA preempts certain West Virginia statutes. More precisely, the WVBA asked the OCC to “preempt ten (10) provisions of the West Virginia Insurance Sales Consumer Protection Act.” Comm’r Pet. Ex. A. Although WVBA’s letter implied that the OCC could itself preempt state law, it effectively requested the OCC to issue an opinion declaring that federal law preempts ten provisions of the West Virginia Code.[8]
On June 2, 2000, the OCC published notice of the WVBA letter in the Federal Register and requested comments on the preemption issue. After considering the WVBA request and reviewing comments, the OCC issued an opinion (the “Preemption Opinion”) on September 24, 2001, suggesting that several provisions of West Virginia law are preempted. Even though the Preemption Opinion was preceded by formal notice and comment, the OCC acknowledges that it “does not purport to be a regulation, an adjudication, or a licensing procedure carrying the force of law.” OCC Br. at 21. In fact, in this very proceeding, the OCC criticizes the Commissioner for failing to acknowledge that the Preemption Opinion is “a legal opinion,” id. at 19 (emphasis in original), and represents only “informal agency guidance.” Id. at 21.
As the OCC recognizes, it is not authorized to render a binding preemption decision. Id. at 22. The OCC is an agency in the Department of the Treasury, charged with the administration of the National Bank Act. See 12 U.S.C. § 1. It has authority over the chartering, supervision, and regulation of national banks, including the right to determine the nature and scope of statutorily authorized banking powers. See 12 U.S.C. § 24(Seventh). In addition, the Comptroller is entitled to promulgate regulations to implement 12 U.S.C. § 92, a statute enabling national banks to sell insurance in small towns, and *399 the Comptroller possesses limited authority to “prescribe rules and regulations to carry out the responsibilities of the office.” 12 U.S.C. § 93a.
The OCC has no authority, however, to act unilaterally in interpreting or implementing GLBA. To the extent that the OCC possesses any power under GLBA, it shares that power with other federal banking agencies. See GLBA, § 305 (codified at 12 U.S.C. § 1831x). Notwithstanding the position of my good friend Judge Gregory, ante at 396, GLBA was not designed to expand the power of national banks to issue insurance, but rather its purpose was to remove the traditional barriers among the banking, insurance, and securities industries. Therefore, the OCC does not possess, nor does it claim, a role in implementing GLBA. Because the OCC is not charged with enforcing or implementing GLBA, its opinions on GLBA’s preemptive effect are not entitled to Chevron-type deference.[9] See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[10] Indeed, it is doubtful that an agency’s opinion on the preemptive effect of federal law should ever be accorded deference since, as the OCC recognizes, “preemption issues are ultimately a matter to be decided by federal courts.” OCC Br. at 22. Therefore, the Preemption Opinion merely represents an advisory opinion of the OCC on an issue outside of its statutory powers.
II.
Although it concedes that the Preemption Opinion lacks the force of law, the OCC nevertheless insists that we should render a decision in this proceeding because its disagreement with the Commissioner presents a justiciable case or controversy within the meaning of Article III. Id. at 23 n. 5. According to the OCC, its legal opinions influence the business decisions of national banks, and the Preemption Opinion may indirectly impair the Commissioner’s ability to enforce state law. OCC Supp. Br. at 4, 6. As another court has suggested, the OCC opinions may have the practical effect of “permitting and encouraging national banks” to disobey otherwise enforceable laws. Sec. Indus. Ass’n v. Clarke, 885 F.2d 1034, 1039 (2d Cir.1989).
Despite the possible real-world effects of the Preemption Opinion, the Commission *400 er’s petition for review fails to present a justiciable case or controversy.[11] Since the Preemption Opinion is purely advisory, it does not interfere with the Commissioner’s ability to enforce West Virginia law. To the extent that a bank might rely on the Preemption Opinion in violating state law, it would do so at its own risk. Because the Preemption Opinion has no legal effect, the petition for review simply asks us to decide whether federal law might, in some future case, provide a defense to a bank’s noncompliance with state law. Such a hypothetical scenario fails to present a justiciable question. See Calderon v. Ashmus, 523 U.S. 740, 747, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (finding no Article III jurisdiction to issue “an advance ruling on an affirmative defense”); Miller v. FCC, 66 F.3d 1140, 1145 (11th Cir.1995) (“By asking this court to decide what another court should do in a future case, petitioners are posing a hypothetical question, the answer to which would be an advisory opinion.”).
A.
Under Article III, the judicial power of the federal courts is limited “to the resolution of ‘cases’ and ‘controversies.’ ” Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). This “bedrock requirement” ensures that Article III power “is not an unconditioned authority to determine the constitutionality of legislative or executive acts.” Id.; see also Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Indeed, the judicial power “ ‘is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.’ ” Valley Forge Christian Coll., 454 U.S. at 471 (quoting Chicago & Grand Trunk Ry. Co. v. Wellman, 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176 (1892)). As part of this case or controversy requirement, federal courts are simply not entitled to issue advisory opinions on hypothetical questions.
Presented with facts nearly identical to those here, the Eleventh Circuit, in Miller v. FCC, concluded that the constitutional prohibition on advisory opinions precluded its review of a non-binding agency opinion. 66 F.3d at 1141-42. In that situation, candidates for public office in Georgia had challenged the FCC’s authority to issue a ruling on whether federal law preempted state law causes of action. Id. The FCC’s ruling only represented its opinion on the preemptive effect of federal law, and it thus did not carry the force of law. Id. at 1144. Because the FCC’s opinion had no binding effect, the court of appeals concluded that the petition for review presented an abstract, hypothetical question rather than a justiciable case or controversy. Id. at 1145^16; see also id. at 1146 (“[W]e are prohibited from determining the propriety of the FCC’s declaratory ruling given the abstract circumstances in which this issue is presented.”).
Similarly, in New York Stock Exchange, Inc. v. Bloom, 562 F.2d 736 (D.C.Cir.1977), the Court of Appeals for the District of Columbia held that a non-binding OCC opinion was not ripe for judicial review as required by Article III. Id. at 736-37, 41. In that case, a bank requested an OCC opinion on whether a proposed banking service would violate the Glass-Steagall *401 Act (the “GSA”), the pre-GLBA statute that had prohibited banks from engaging in insurance practices. Id. at 737. The OCC responded to this request with an opinion letter concluding that the proposed service was consistent with the GSA. Id. at 739. The New York Stock Exchange (the “NYSE”) then sued the OCC under the Administrative Procedures Act, challenging the OCC opinion. In response, the OCC insisted that the NYSE’s claim was not ripe for review because the opinion letter did not carry the force of law.
The court of appeals agreed with the OCC, ruling that the NYSE’s challenge to the OCC opinion was not ripe for review. The court evaluated the ripeness issue under the two-part inquiry of Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), analyzing (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding judicial review. In applying the first prong of Abbott Laboratories, the court noted “that appellants are challenging informal opinion letters rather than formal rules or policy statements.” New York Stock Exch., 562 F.2d at 741. The court also pointed out that undeveloped facts would be relevant to deciding the merits of the NYSE’s challenge, so it concluded that judicial review of the OCC opinion would be premature. Id. Addressing the potential hardship to the parties of withholding such review, the court of appeals emphasized that “appellants’ conduct [was] not directly regulated by the agency action at issue and consequently they are not facing a ‘Hobson’s choice’ between burdensome compliance and risky noncompliance.” Id. Accordingly, it concluded that the NYSE’s challenge to the OCC opinion failed to pass Article III muster. Id. at 743.
B.
The constitutional prohibition on advisory opinions, embodied in Article III and its jurisprudence, bars the exercise of jurisdiction here. The Commissioner’s petition for review presents nothing more than an abstract disagreement between state and federal regulators. See Abbott Labs., 387 U.S. at 148 (noting that ripeness doctrine is designed to “prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements”). The Preemption Opinion simply does not represent the type of final agency action that would be subject to judicial review.[12] Compare NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (reviewing final OCC opinion issued pursuant to 12 U.S.C. § 24(Seventh)); Bank of Am. v. City and County of San Francisco, 309 F.3d 551 (9th Cir.2002) (same); see also Florida v. Weinberger, 492 F.2d 488, 492 (5th Cir.1974) (finding jurisdiction to review agency regulation that “is final and is formally and actually in effect”).
Under the Abbott Laboratories test, the question of GLBA’s preemptive effect on West Virginia law is not ripe for judicial review. First, the preemption issues are *402 not fit for our consideration. See 387 U.S. at 149. In order to address the issue of preemption, the majority must make assumptions about undeveloped factual issues that are material to its decision. For example, the question of whether West Virginia law will interfere with the ability of banks to enter the insurance market involves factual issues about insurance and banking practices. Because no bank has been joined as a party in this proceeding, the majority is forced to rely on the OCC to understand the banking and insurance industries in West Virginia. Ante at 397. The OCC, however, is an imperfect surrogate for the banking and insurance industries. To ensure a full development of the relevant facts, the scope of GLBA’s preemption should initially be addressed in an enforcement proceeding initiated by a state regulator, or in a declaratory judgment action instituted by a bank.[13]
Second, judicial review is not necessary at this juncture to protect the parties from any undue hardship. See Abbott Labs., 387 U.S. at 151-53. The parties have alternate avenues available through which to seek judicial review of the preemption issues. If the petition for review is dismissed for want of jurisdiction, the Commissioner may then institute an enforeement action against non-complying banks, or banks may institute declaratory judgment proceedings against the Commissioner. See Indep. Broker-Dealers’ Trade Ass’n v. SEC, 442 F.2d 132, 140 (D.C.Cir.1971) (reviewing informal agency action because party had no other recourse to obtain relief). Further, the Preemption Opinion does not place regulated entities into the position of making a “Hobson’s Choice” between burdensome compliance or risky noncompliance. See Abbott Labs., 387 U.S. at 152-53; Nat’l Automatic Laundry Cleaning Council v. Shultz, 443 F.2d 689, 696-97 (D.C.Cir.1971) (“NALCC’). Because the Preemption Opinion has no legal effect, the parties face no undue hardship in waiting for judicial review.
C.
Significantly, the petition does not request review of a coercive (even if technically non-binding) agency opinion.[14] In limited circumstances, an “agency action may be reviewable even though it is never to have a formal, legal effect” because it will have “an immediate and practical impact” on regulated entities. Cont’l Airlines, Inc. v. Civil Aeronautics Bd., 522 *403 F.2d 107, 124 (D.C.Cir.1974) (en banc). For example, in Independent Broker-Dealers’ Trade Association, the Second Circuit reviewed an SEC letter asking the NYSE to ban a controversial brokering practice. 442 F.2d at 139-40. The SEC could have issued binding regulations, but the NYSE changed its rules voluntarily. Id. Even though the SEC letter was merely suggestive, the court reviewed a trade association’s challenge, concluding that the letter had a sufficiently coercive effect to justify judicial review. Id. at 145.
In the circumstances presented here, however, the Preemption Opinion is not sufficiently coercive to justify judicial review. It does not carry the force of law, it does not impose affirmative obligations, and it does not threaten consequences for noncompliance. Put simply, the Preemption Opinion is not renewable because the OCC acted outside its regulatory authority. Compare Appalachian Power Co. v. EPA, 208 F.3d 1015, 1021 (D.C.Cir.2000) (reviewing agency “guidance” on interpretation of its regulations); Student Loan Mktg. Ass’n v. Riley, 104 F.3d 397, 407 (D.C.Cir.1997) (reviewing agency opinion on interpretation of agency’s organic statute). Even if, as a practical matter, national banks will rely on the Preemption Opinion, such reliance would result from a mistaken legal conclusion regarding the OCC’s authority, and it does not create Article III jurisdiction.
III.
Because the majority has reached beyond our jurisdiction in rendering this decision, I respectfully dissent.

. In referring to "the majority," I mean the majority’s judgment that dismisses the Commissioner's petition for review on the basis that federal law preempts aspects of the West Virginia Code. I realize that there is no majority opinion here.

. Pursuant to Article III of the Constitution of the United States, the power of our judiciary extends:
to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States, ... [and] to Controver-síes to which the United States shall be a Party; to Controversies between two or more States; between a State and Citizens of another State; between Citizens of different States; ... and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.
U.S. Const, art. Ill, § 2, cl. 1.

. The contested provisions of the West Virginia Code are contained within sections 6, 8-11, 13, and 14 of Article 11A of Chapter 33.

. If the Preemption Opinion had purported to interpret the incidental powers of national banks pursuant to the National Bank Act, we would be presented with an entirely different case. Had the OCC issued this type of opinion, it would be entitled to Chevron deference, and (more importantly for our purposes) we would have jurisdiction to review it. See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (conducting Chevron analysis for an OCC interpretation of incidental powers of national banks under 12 U.S.C. § 24(Seventh)); Indep. Ins. Agents of Am., Inc. v. Hawke, 211 F.3d 638, 643 (D.C.Cir.2000) (same); Sec. Indus. Ass'n v. Clarke, 885 F.2d 1034, 1037-38 (2d Cir.1989) (addressing OCC opinion approving national bank practice). In this situation, however, the OCC issued a wide-ranging opinion on the general preemptive effect of GLBA. As the OCC properly recognizes, its Preemption Opinion is not entitled to Chevron-type deference and, as it should have recognized, we have no jurisdiction to review such an opinion.

. Even if the OCC was the agency in charge of enforcing GLBA, informal agency opinions are not generally entitled to Chevron deference. Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant Chevron-style deference.”).

. The First Circuit — in a dispute between a state regulator and the OCC over GLBA’s preemptive effect — has also recently raised the concern that federal courts lack Article III jurisdiction in this regard. See Bowler v. Hawke, No. 02-1738 (1st Cir. argued August 2, 2002). While the First Circuit has ordered supplemental briefing on the Article III issue, it has yet to render a decision on the matter.

. Ordinarily, Congress does not purport to give federal courts jurisdiction over provisional or preliminary agency actions. See 5 U.S.C. § 704 (requiring final agency action for judicial review under Administrative Procedures Act); see also Allied Corp. v. United States Int'l Trade Comm’n, 850 F.2d 1573, 1578 (Fed.Cir.1988) ("That an agency may choose to render advisory opinions cannot create for one displeased with its advice a cause of action cognizable in an Article III court.”). In this situation, however, the Article III issue is squarely presented because GLBA attempts to give federal courts jurisdiction to adjudicate disputes between state and federal regulators, no matter how abstract such a dispute may be. See GLBA, § 304(a) (codified at 15 U.S.C. § 6714(a)).

. Where the OCC has authorized national banks to engage in practices that violate state or municipal laws, national banks typically initiate declaratory judgment proceedings against state or local regulators. See generally Bank of Am. v. City and County San Francisco, 309 F.3d 551 (9th Cir.2002) (bank sued local regulator); Wells Fargo Bank Texas, N.A. v. James, 184 F.Supp.2d 588 (W.D.Tex.2001) (bank sued state regulator); Metrobank Nat'l Ass’n v. Foster, 178 F.Supp.2d 987 (S.D.Iowa 2001) (banks sued state regulator).

. The label attached by an agency to its action is not determinative of the action’s finality. See CBS v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). An agency action may, in fact, be final even though the agency characterizes it as tentative, preliminary, or provisional. See, e.g., Appalachian Power Co. v. EPA, 208 F.3d 1015, 1020-21 (D.C.Cir.2000) (reviewing agency "guidance” because it was effectively the agency's final position). To decide whether an agency action is reviewable, courts take a pragmatic approach to the requisite finality and look to whether the agency action has "contemplation of expected conformity.” In-dep. Broker-Dealers’ Trade Ass’n, 442 F.2d at 141; see also NALCC, 443 F.2d at 697. In this situation, unlike in CBS and its progeny, the Preemption Opinion cannot be considered a final, reviewable action because it deals with a matter outside the OCC’s bailiwick. Therefore, the OCC cannot reasonably expect conformity with its position.