**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0078n.06
Filed: January 31, 2006

No. 04-3527

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MICHAEL A. GALLUZZO,

    *Plaintiff-Appellant,*

                                     **On Appeal from the United States**

v.                                  **District Court for the Southern District**

                                      **of Ohio**

CHAMPAIGN COUNTY COURT OF
COMMON PLEAS, et al.,

    *Defendants-Appellees.*

BEFORE: GUY and GIBBONS, Circuit Judges; and EDMUNDS, District Judge.[*]

    **PER CURIAM**. Plaintiff-Appellant Michael Galluzzo and Defendant-Appellee Teresa

Cook were formerly married and had two daughters together. When Cook filed for divorce on

December 8, 1993, in the Champaign County, Ohio, Court of Common Pleas, she was designated

the custodial parent under Ohio law. Galluzzo now challenges the constitutionality of the provisions

of Ohio law that led to his designation as a noncustodial parent. In essence, he argues that his

fundamental right to raise his children has been violated.

    Galluzzo, with the support of several *amici curiae*, raises interesting constitutional

arguments. The magistrate judge, exercising plenary magistrate judge jurisdiction by consent of the

parties, reached the merits of these arguments, issuing a detailed opinion in which he found that

---

    [*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of
Michigan, sitting by designation.

Galluzzo's constitutional rights had not been violated. We believe that it was error for the district court to reach the merits of this case. But because we agree with the outcome in the district court, we AFFIRM its dismissal of this case.

## I.

Plaintiff-Appellant Galluzzo filed his initial complaint in April of 2001, in the United States District Court for the Southern District of Ohio.[1] He named as defendants the Champaign County Court of Common Pleas, Judge Roger B. Wilson (the Presiding Judge in that court), his ex-wife Teresa Cook, and Cook's attorney Ronald Thompkins. Galluzzo sought declaratory relief, injunctive relief, and damages. He explicitly mentioned 42 U.S.C. § 1983.

In his amended complaint, filed in June of 2001, Galluzzo dismissed all defendants except the Champaign County Court of Common Pleas. The amended complaint makes no mention of Section 1983, instead raising only a claim for declaratory relief under 28 U.S.C. § 2201. Galluzzo seeks a declaration that both Ohio Rule of Civil Procedure 75(N), which addresses custody determinations *pendente lite*, and Ohio Revised Code § 3109.04, which addresses permanent custody determinations, are unconstitutional.

In subsequent proceedings in front of Magistrate Judge Michael R. Merz, the Champaign County Court of Common Pleas was dismissed from the case on the ground that "[a]s a court, its sole interest is in administering the law," and thus it had no real interest in the outcome of this litigation. But upon dismissing the state court, the Magistrate Judge granted leave for Galluzzo to

---

[1]Prior to this appeal, Galluzzo represented himself *pro se*. He now has the support of *pro bono* counsel.

add "either Teresa Cook or the State of Ohio or both as party defendants." Then, after the Magistrate Judge first added the State of Ohio as a defendant, he dismissed the case against Ohio[2] and added Teresa Cook as the sole defendant, finding that "[a]ll that is necessary is that there be a party sufficiently adverse to Plaintiff to allow this Court to exercise its undoubted jurisdiction to decide the constitutionality of the statute and rule." Teresa Cook has since been a defendant in name only, taking no part in the litigation. The State of Ohio, however, has argued forcefully in support of the Ohio provisions' constitutionality as amicus curiae.

Galluzzo and Cook consented to plenary magistrate judge jurisdiction, pursuant to 28 U.S.C. § 636(c). On January 20, 2004, Magistrate Judge Merz issued a "Decision and Order on the Merits." Significantly, in the "Subject Matter Jurisdiction" section of his opinion, the Magistrate made clear that he viewed this as a Section 1983 case: "Plaintiff brought this action under 42 U.S.C. § 1983 for deprivation by the State of Ohio of constitutional rights . . . ."

The Magistrate first addressed several justiciability challenges to this case, including the *Younger* abstention doctrine,[3] the *Rooker-Feldman* doctrine,[4] and Article III standing requirements. He rejected these challenges except as to Ohio Rule of Civil Procedure 75(N), holding that Galluzzo lacked standing to challenge that rule because "any injury he suffered from [t]he application of Rule 75(N) to his case has been completely superseded by entry of the final decree of divorce." The Magistrate then reached the merits of Galluzzo's constitutional claim as to Ohio Revised Code §

---

[2] The State of Ohio did not consent to the lawsuit.

[3]*See Younger v. Harris*, 401 U.S. 37 (1971).

[4]*See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

3109.04. He rejected Galluzzo's argument that to deprive parents of their fundamental right to raise their children required a showing of unfitness by clear and convincing evidence, and that absent such a showing, the Constitution requires a presumption of shared parenting. Thus, the Magistrate held the challenged statute to be constitutional, denied Galluzzo's motion for summary judgment, and dismissed the complaint.

## II.

This case raises some very interesting constitutional questions about the fundamental rights of parents in child custody proceedings. The questions are so interesting, in fact, that they have generated reams of argument on the merits from a dedicated and able *pro se* plaintiff, a zealous *pro bono* attorney, several named defendants, a handful of ardent *amici curiae* (including the Attorney General of the State of Ohio), and a thoughtful magistrate judge. The discussion of the constitutional issues is impressive, but scant attention has been paid to some rudimentary justiciability questions, the simplest of which should have disposed of this case long ago.

Galluzzo insists that his amended complaint "rais[es] the same legal issues, while removing all of the underlying fact based 42 U.S.C. § 1983 claims and voluntarily dismissing several defendants . . . . [T]he case was simplified into a general constitutional challenge."[5]

---

[5]Despite Galluzzo's abandonment of his Section 1983 claims, the Magistrate appears to have viewed this case as a Section 1983 action for its entire pendency. 42 U.S.C. § 1983 states in part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

28 U.S.C. § 2201, upon which Galluzo relies,  provides in part,

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Significantly, Section 2201 does not grant jurisdiction to the federal courts.  Rather, it applies only in cases "of actual controversy" already within federal court jurisdiction under Article III of the Constitution.  The United States Supreme Court famously discussed this requirement in 1937, in *Aetna Life Insurance Company v. Haworth*:

> A "controversy" in this sense must be one that is appropriate for judicial determination.  A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.  The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

300 U.S. 227, 240-241 (1937) (internal citations omitted).  The Court elaborated further in 1941, in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it

---

It is therefore universally understood that a successful cause of action under Section 1983 must include the following two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).  Teresa Cook, the only defendant in this case, is not a state actor.  She was simply involved in a custody dispute more than ten years ago, subject to the same Ohio laws that Galluzzo now contests.  The Magistrate's reliance on Section 1983 is therefore in error.  Inasmuch as Galluzzo's claim rests on Section 1983, it fails as a matter of law.

would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

312 U.S. 270, 273 (1941) (internal citations omitted).

While these discussions are helpful, they fail to apply the sort of factual analysis necessary to resolve this particular case. In 1945, however, the Court decided a case presenting similar facts and a similar issue. In *Coffman v. Breeze Corps.*, 323 U.S. 316 (1945), a patent owner sued his licensees in federal court, seeking a declaration that the Royalty Adjustment Act was unconstitutional, and further seeking to enjoin the defendants from paying royalties to the government. The Court held that there was no case or controversy:

Appellant asserts in the present suit no right to recover the royalties. It asks only a determination that the Royalty Adjustment Act is unconstitutional and, if so found, that compliance with the Act be enjoined . . . . If contested the validity of the Act would be an issue which, so far as it could ever become material, would properly arise only in a suit to recover the royalties, where it could be appropriately decided.

In the circumstances disclosed by the record and for purposes of the present suit, the constitutionality of the Act is without legal significance and can involve no justiciable question unless and until appellant seeks recovery of the royalties, and then only if appellee relies on the Act as a defense. The prayer of the bill of complaint that the Act be declared unconstitutional is thus but a request for an advisory opinion as to the validity of a defense to a suit for recovery of the royalties . . . . The bill of complaint thus fails to disclose any ground for the determination of any question of law or fact which could be the basis of a judgment adjudicating the rights of the parties.

*Id.* at 323-324.

The Court has recently reaffirmed this position. In *Calderon v. Ashmus*, 523 U.S. 740 (1998), the plaintiff (on behalf of a class) sought a declaration under 22 U.S.C. § 2201 that the State

of California did not qualify for certain procedural advantages in defending against habeas corpus petitions under Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2261 *et seq*. The Court saw this issue as subordinate to the actual "controversy" in the case:

> The underlying 'controversy' between petitioners and respondent is whether respondent is entitled to federal habeas relief setting aside his sentence or conviction obtained in the California courts. But no such final or conclusive determination was sought in this action. Instead, respondent carved out of that claim only the question of whether, when he sought habeas relief, California would be governed by Chapter 153 or by Chapter 154 in defending the action. Had he brought a habeas action itself, he undoubtedly would have obtained such a determination, but he seeks to have that question determined in anticipation of seeking habeas so that he will be better able to know, for example, the time limits which govern the habeas action.

*Id*. at 746. The Court reasoned that the lawsuit was an "attempt[] to gain a litigation advantage" because "any judgment in this action . . . would not resolve the entire case or controversy . . . , but would merely determine a collateral legal issue governing certain aspects of . . . pending or future suits." *Id*. at 747. The Court held that the case presented no justiciable case or controversy within the meaning of Article III of the Constitution. *Id*. at 749.

Based on these authorities, it is clear to us that Galluzzo's lawsuit is an inappropriate means to challenge Ohio's parental custody laws and procedures. Galluzzo has dropped all of his fact-based claims, and seeks only a general declaration that the Ohio statute and Rule are unconstitutional. He is not petitioning the federal court for custody of his children. Rather, he simply wants a favorable ruling on a "collateral legal issue," upon which (we presume) he wishes to pursue custody in a separate proceeding.

If Galluzzo believes that his constitutional rights have been violated, he may petition the Ohio courts for a modification of the original decree awarding parental rights. O.R.C. § 3109.04(E).

Those courts will surely provide Galluzzo with an adequate forum to argue the constitutional issues presented by this case, just as they would have in 1993, when first presented with this custody dispute.

## III.

Because there is no "case" or "controversy" here sufficient to warrant federal court jurisdiction, we AFFIRM the district court's dismissal of this case, albeit on alternate grounds.