# United States Court of Appeals for the Federal Circuit

---

**ABBVIE INC., ABBVIE BIOTECHNOLOGY, LTD.,**
*Plaintiffs-Appellants*

**v.**

**MEDIMMUNE LIMITED,**
*Defendant-Appellee*

---

2017-1689

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 2:16-cv-00322-AWA-DEM, Judge Arenda L. Wright Allen.

---

Decided: February 5, 2018

---

JEFFREY I. WEINBERGER, Munger, Tolles & Olson LLP, Los Angeles, CA, argued for plaintiffs-appellants. Also represented by HEATHER E. TAKAHASHI; GINGER ANDERS, Washington, DC; DAVID PENN FRAZIER, MICHAEL A. MORIN, Latham & Watkins LLP, Washington, DC.

DAVID I. BERL, Williams & Connolly LLP, Washington, DC, argued for defendant-appellee. Also represented by THOMAS S. FLETCHER, SHAUN PATRICK MAHAFFY.

---

Before PROST, *Chief Judge,* DYK, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

AbbVie, Inc., and AbbVie Biotechnology Ltd. ("AbbVie") filed suit in the Eastern District of Virginia against MedImmune Limited ("MedImmune"), seeking a declaratory judgment that U.S. Patent No. 6,248,516 ("the '516 patent") is invalid. The district court determined that it lacked jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and alternatively that it would not exercise jurisdiction if it existed, and it granted MedImmune's motion to dismiss. We affirm.

BACKGROUND

This declaratory-judgment action concerns a development and licensing agreement entered into by predecessors to AbbVie and MedImmune in 1995. The agreement stemmed from a research collaboration between those predecessors that resulted in the antibody adalimumab, the active ingredient in the well-known pharmaceutical drug Humira. The contract is governed by British law.[1] The 1995 agreement licensed AbbVie to practice the '516 patent among others, although the parties agree that AbbVie does not presently practice it. The agreement also required AbbVie to pay royalties on the sales of certain antibodies "until the last to expire of [certain] Patents or the expiry of fifteen years from the date of First Commercial Sale of a Product by [AbbVie's predecessor] . . . (whichever is later)." J.A. 62. The last of those patents to expire is the '516 patent, with an expiration date of June 19, 2018. The first commercial sale occurred in January 2003. Accordingly, AbbVie's obliga-

---

[1] The 1995 agreement itself is not in the record, but the parties agree—as did the district court—that British law governs.

tion to pay royalties to MedImmune either ceased in January 2018 (if the period is measured from the first commercial sale) or will cease in June 2018 (if measured from the expiration date of the '516 patent).

Seeking to hasten the end of its royalty obligations, AbbVie brought this declaratory-judgment action in June 2016 seeking a declaration that the '516 patent is invalid. AbbVie argued that a declaration of the '516 patent's invalidity would constitute its expiration for purposes of the 1995 agreement (making the royalty obligations expire in January 2018). However, AbbVie did not seek a declaration as to the contract's interpretation.

MedImmune argued that the district court lacked declaratory-judgment jurisdiction or, if it had jurisdiction, should decline to exercise it. On the merits, MedImmune rejected AbbVie's interpretation of the contract, contending that the royalty obligations are pegged to the patent's expiration date without regard to the patent's validity.[2]

The district court dismissed the complaint on two alternate grounds. First, the court observed that AbbVie does not practice the '516 patent and therefore is not at risk of an infringement suit. The district court held that

---

[2]   MedImmune also argued that three other entities—namely, a research arm of the British government, an American research institute, and an American corporation—own interests in the '516 patent and are necessary and indispensable parties to this action under Federal Rule of Civil Procedure 19. AbbVie contends that it properly sued only MedImmune, which AbbVie argues "possesses all substantial rights in the '516 patent relevant to this case." Appellant Br. 44. The district court found this issue moot given its dismissal of the complaint on other grounds. In light of our disposition of this case, we also need not decide the issue.

AbbVie "could not be subject to a patent [infringement] action, and therefore lack[s] standing to bring this action." J.A. 6.

Second, assuming AbbVie had standing, the district court noted that the interpretation of the 1995 agreement was governed by British contract law and would implicate the rights of the British government, which jointly owns the patent through one of its research councils. Deciding the invalidity question, the district court observed, would not resolve the parties' ultimate dispute and would raise these additional concerns about foreign law and sovereign immunity. The district court concluded, therefore, that it would not exercise its declaratory-judgment jurisdiction as a matter of discretion. The district court dismissed the case.

AbbVie timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

The district court erred in holding that it lacked declaratory-judgment jurisdiction on the basis that there is no controversy as to infringement of the '516 patent. As a general principle, "federal courts, when determining declaratory judgment jurisdiction, often look to the 'character of the threatened action'" that the declaratory-judgment defendant "might have brought." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). In other words, courts examine declaratory actions, at least in part, by looking to the "mirror image" suit the declaratory defendant might bring if and when it seeks coercive relief.

In conducting this analysis, the district court characterized AbbVie's declaratory claim as the mirror image of an infringement suit. It then applied our cases from the infringement context, concluding that AbbVie had failed

to present an actual case or controversy sufficient to trigger Article III jurisdiction in light of "the lack of evidence of infringement, the lack of evidence of any intent to infringe the patent, and the absence of any threat to sue [AbbVie] for infringement." J.A. 5. It concluded that AbbVie "could not be subject to a patent action, and therefore lack[s] standing to bring this [declaratory] action." J.A. 6.

This was a mischaracterization of AbbVie's claim, which has never rested on the possibility of infringement but rather concerns the parties' contractual obligations under the 1995 agreement. Those contractual obligations turn on the expiration and, perhaps, the validity of the '516 patent, but there is no contention that they turn on whether AbbVie engaged in infringement.

If properly presented, such a contractual dispute could confer declaratory-judgment jurisdiction. The Supreme Court has held repeatedly that contractual disputes can be the subject of a declaratory action. *E.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125 (2007) ("All we need determine is whether petitioner has alleged a contractual dispute."); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 426–29 (1991) (per curiam) (finding federal diversity jurisdiction in declaratory action concerning breach of contract); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674 (1950) (same); *Aetna Life Ins. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937) ("The dispute relates to legal rights and obligations arising from the contracts of insurance."). And it has held that declaratory-judgment jurisdiction extends to contractual disputes that turn on issues of patent infringement and invalidity. *MedImmune*, 549 U.S. at 123–26.

So too has this court. In *Powertech Technology Inc. v. Tessera, Inc.*, the parties disputed whether royalty obligations under a contract were contingent on the validity and

infringement of a patent. 660 F.3d 1301, 1308–10 (Fed. Cir. 2011). We held that the parties' dispute "as to whether the license agreement require[d] royalty payments to be tied to valid patent coverage [was] sufficient to support declaratory judgment jurisdiction." *Id.* at 1310 (citing *MedImmune*, 549 U.S. at 135–36); *see also Kimble v. Marvel Enters. Inc.*, 727 F.3d 856, 859–60, 864, 867 (9th Cir. 2013) (affirming declaratory judgment that royalty obligations ceased upon patent expiration even though the parties agreed there was no infringement), *aff'd sub nom. Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401 (2015); *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349 (Fed. Cir. 2011) (finding declaratory-judgment jurisdiction on the ground, among others, that an indemnitor has an interest in determining its potential contractual liability, where liability turned not on its own infringement but on the indemnitee's).

AbbVie's problem is that it did not seek a declaration of its contractual obligations. Rather, AbbVie's complaint only sought a declaration of invalidity with respect to the '516 patent. And as MedImmune argues and the district court held, such a declaration would not actually resolve the parties' contractual dispute.

The Supreme Court has long held that in general "a litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." *MedImmune*, 549 U.S. at 127 n.7 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)). This principle is an application of Article III's case-or-controversy requirement in the declaratory-judgment context. *See Calderon*, 523 U.S. at 745–47. In *Calderon*, for example, the incarcerated plaintiffs sought a declaration that they would be entitled to certain procedural benefits conferred by statute should they bring a habeas action. *Id.* at 742. Rather than resolve the matter in the normal course of their habeas proceedings, the plaintiffs "s[ought] to have that

question determined in anticipation of seeking habeas so that [they] w[ould] be better able to know, for example, the time limits that govern the habeas action." *Id.* at 746. The Supreme Court found this use of the Declaratory Judgment Act impermissible under Article III because it "would not resolve the entire case or controversy . . . but would merely determine a collateral legal issue governing certain aspects of their pending or future suits." *Id.* at 747 (citing *Coffman v. Breeze Corps.*, 323 U.S. 316, 322–24 (1945)). In other words, in general, parties may not "seek[] by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution." *Id.* at 748; *see also McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1166–67 (8th Cir. 2017) (finding no jurisdiction over declaratory claim concerning waiver of employees' age-discrimination rights where relief could not resolve the actual controversy—the underlying discrimination claims); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 327–28 (3d Cir. 2014) (finding no jurisdiction to "determin[e] rights and defenses available . . . in future proceedings," such as preclusion issues that might arise in later personal-injury suits).

This case suffers from the same defect. The 1995 agreement, which is governed by British law, pegs the end of AbbVie's payments to the expiration of the '516 patent. It is an open question whether British courts would consider the invalidation of a patent to be tantamount to its expiration for purposes of this agreement. Without a resolution to this question, the parties' contractual dispute would persist. Contrary to AbbVie's argument, the Supreme Court in *MedImmune* did not hold that a patent-invalidity question could be brought as an action separated from the underlying dispute as to contract interpretation. *See* 549 U.S. at 123–25, 127 n.7 (explaining that the plaintiff there sought a conclusive declaration as to its contractual obligations, rather than piecemeal adjudication of the subsidiary patent issues).

We have occasionally permitted an exception to the rule against piecemeal adjudication in circumstances where litigation is also pending that would resolve the remaining questions. For example, in *Dey Pharma, LP v. Sunovion Pharmaceuticals Inc.*, we approved of declaratory-judgment jurisdiction in a Hatch-Waxman Act suit that would not entirely resolve the parties' dispute. 677 F.3d 1158, 1163–64 (Fed. Cir. 2012). The patentee in *Dey* had brought an infringement action against a generic drug manufacturer on two of three patents related to the pharmaceutical drug at issue. *Id.* at 1161. The generic company then filed a separate declaratory-judgment action asserting the invalidity and noninfringement of the third patent. *Id.* The patentee asserted the rule against piecemeal adjudication, but we observed that "the only reason there are two cases here is that [the patentee] declined to sue [the generic company] on all the [three] patents." *Id.* at 1164. We concluded that "simply eliminating one barrier [to resolving the dispute] is sufficient for declaratory jurisdiction, so long as litigation is also pending that could eliminate the other barriers." *Id.*; *accord Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1288, 1293 (Fed. Cir. 2008).

Here, AbbVie has no other pending litigation that would conclusively resolve its contractual dispute with MedImmune. Without taking at least that step, in either the American or British courts, it cannot establish declaratory-judgment jurisdiction over the question of invalidity. Accordingly, the judgment of the district court dismissing the action without prejudice is affirmed.

**AFFIRMED**