# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 12, 2018

Lyle W. Cayce
Clerk

No. 17-50674

ELISABETH HENDRIKA SOPHIA MARIA SMIT, widow of M.G.H. Craenmehr and mother of Steven Craenmehr, Individually; LIZZY JANE FRANCIS PLUG, Individually, as Next Friend of M.C., a minor, and on behalf of the Estate of Steven Craenmehr, deceased,

      Plaintiffs - Appellants

v.

SXSW HOLDINGS, INCORPORATED, formerly known as SXSW, Incorporated; SXSW, L.L.C., formerly known as SXSW Transition, L.L.C.; PATRICK LOWE; TRANSPORTATION DESIGN CONSULTANTS, L.L.C.; CITY OF AUSTIN,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, GRAVES, and COSTA, Circuit Judges.

REAVLEY, Circuit Judge:

The 2014 South by Southwest Festival was marred by tragedy. An intoxicated driver fled Austin police and knowingly accelerated through a closed city block—crowd and all—killing four people and injuring many others. The family of one victim filed this wrongful-death suit against the festival organizers and the City of Austin, alleging those actors failed to adequately blockade the street and prevent the ensuing harm.

No. 17-50674

The district court dismissed the plaintiffs' lawsuit for failure to state a claim under Texas law. We affirm.

## I.  BACKGROUND[1]

Every March, the City of Austin is home to one of the largest music, film, and interactive festivals in the world: South by Southwest (commonly referred to as "SXSW"). SXSW takes place not at a single venue but at almost 100 separate locations across the downtown area. Festival attendees travel from one venue to another, and they often do so on bicycles or on foot.

SXSW's multi-venue format requires that certain segments of streets be closed to vehicular traffic. To that end, SXSW submits an annual application to the City for a right-of-way permit. For the March 2014 festival, SXSW submitted such an application and requested the closure of Red River Street between 8th and 11th street (in other words, the 800 through the 1000 block). The City approved the application and issued a right-of-way permit. That permit identified a closure of Red River Street between the 800 and 1000 blocks but included a condition that "[a]ll traffic controls must be provided in accordance with the approved traffic control plan."

The subsequent traffic control plan left the 1000 block of Red River Street open to vehicular traffic, closing instead only the 700, 800, and 900 blocks. To effectuate those closures, the organizers and the City placed "Type III" barricades at each intersection, and a police officer stood watch.

---

[1] With one exception, our recitation of the facts comes from (1) the plaintiffs' Second and Third Amended Complaints (the live pleadings for purposes of this appeal) and (2) exhibits attached thereto. *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) ("In ruling on a Rule 12(b)(6) motion, we may consider the contents of the pleadings along with any attachments.").

No. 17-50674

In the early morning hours of March 13, 2014, a police officer observed Rashad Owens make an illegal turn onto the southbound I-35 access road.[2] The officer activated his emergency lights and attempted to stop Owens's vehicle, but the intoxicated Owens turned right onto 9th street. Owens then turned north onto the 900 block of Red River Street, bypassing the barriers, accelerating through the festival zone, and hitting multiple pedestrians. Owens kept going and breached the barriers at the opposite end of the block. And upon reaching the open 1000 block of Red River Street, Owens hit and killed a bicyclist, Steven Craenmehr. Craenmehr was a music producer from the Netherlands and a SXSW attendee.

In all, Owens killed four people. A jury later convicted Owens of capital murder—*i.e.*, knowingly engaging in conduct for which death is reasonably certain to result and causing multiple deaths in the same criminal transaction. TEX. PEN. CODE § 19.03(a)(7)(A); *see also Owens v. State*, 549 S.W.3d 735, 738 (Tex. App.—Austin 2017, pet. ref'd) (affirming Owens's conviction on appeal).

Craenmehr's mother and his widow (the latter on behalf of herself, Craenmehr's estate, and the couple's minor child) filed a Texas diversity suit against SXSW Holdings, Inc., SXSW L.L.C., and SXSW's traffic consultant (collectively, "the SXSW defendants"), along with a few other defendants not parties to this appeal.[3] The gist of the plaintiffs' complaint is that the risk of an errant vehicle in downtown Austin was foreseeable, the SXSW defendants should therefore have blockaded Red River Street with water-filled barriers

---

[2] The narrative of Owens's crime comes from the plaintiffs' Original Complaint. The plaintiffs omitted Owens's criminal conduct from their later complaints, but the district court denied a motion to strike and held the plaintiffs to those earlier admissions. The plaintiffs do not appeal that ruling here, but more fundamentally, they do not dispute that Owens's conduct was a crime.

[3] Several other victims filed a state-court lawsuit against the same defendants. The district court there granted summary judgment for the defendants, and the case presently sits on appeal. *Nguyen v. SXSW Holdings, Inc.*, No. 14-17-00575-CV.

instead of the Type-III variety, and that failure to do so resulted in Craenmehr's death. The plaintiffs phrased those allegations in terms of: (1) negligence (ordinary and gross); (2) premises liability; (3) negligence per se; (4) breach of implied warranty; (5) public nuisance; (6) negligent undertaking; and (7) negligent hiring.

The SXSW defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Original Complaint for failure to state a claim, arguing in large part that a lack of duty foreclosed tort liability. The plaintiffs amended in response, and the SXSW defendants moved to dismiss the First Amended Complaint. Again, the plaintiffs amended. The parties then stipulated that the Second Amended Complaint made allegations "identical" to the First Amended Complaint and that the district court could therefore treat the already-pending motion to dismiss as "applying fully to the Second Amended Complaint."

The district court granted the SXSW defendants' motion to dismiss, concluding that (1) the plaintiffs' negligence and premises-liability claims failed because the SXSW defendants had no control over the site of Craenmehr's death (an open city street); (2) alternatively, those same claims failed because the SXSW defendants had no duty to prevent Owens's unforeseeable criminal act; (3) the plaintiffs failed to plead negligence per se because they did not identify a violation of any traffic-control ordinance; and (4) Texas law supplied no basis for the implied-warranty, public-nuisance, negligent-undertaking, or negligent-hiring claims.

The plaintiffs amended their complaint one last time, joining the City of Austin as a defendant. The Third Amended Complaint accuses the City of the same sort of wrongdoing as the SXSW defendants but only under negligence and premise-liability theories. The City moved to dismiss under 12(b)(6), and the district court granted the motion, concluding once more that Owens's criminal conduct was not foreseeable.

No. 17-50674

The district court then signed a final judgment with respect to the SXSW defendants and the City (having severed the claims against the other defendants). The plaintiffs appealed, briefing only their negligence, negligence per se, premises-liability, public-nuisance, and implied-warranty claims, thereby abandoning all others. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

## II. STANDARD OF REVIEW

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

## III.  DISCUSSION

We will divide our discussion between the two categories of defendants and between the plaintiffs' various claims.

**A.    The SXSW Defendants**

*1. Negligence and Premises Liability*

We agree with both parties and the district court that we should consider the negligence and premises-liability claims together. "Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). But irrespective of the type of duty owed, both negligence and its premises-liability cousin require "the existence of a duty" in the first place. *Id.* An outright lack of duty—something courts must decide as a question of law—would thus foreclose both claims. *See Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

No. 17-50674

On that score, the district court held that the plaintiffs failed to plausibly allege the SXSW defendants controlled the premises where Owens struck Craenmehr, an open city street. We agree.

In Texas, "[t]he duty of a premises owner or occupier to provide protection arises from control of the premises; the duty does not extend beyond the limits of the premises owner's control." *Dixon v. Hous. Raceway Park, Inc.*, 874 S.W.2d 760, 762 (Tex. App.—Houston [1st Dist.] 1994, no writ) (citing *Grapotte v. Adams*, 111 S.W.2d 690, 691 (Tex. 1938)). As one might expect, a city typically owns and controls its city streets to the exclusion of all others. *Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 226–27 (Tex. App.—Houston [14th dist.] 1994, writ. denied). The plaintiffs alleged, however, that this situation differed:

> Defendants had a City of Austin Right-of-Way permit that made it the temporary legal occupier of Red River Street between 9th Street and 11th Street. Defendants' Right-of-Way permit gave them temporary legal control over Red River Street between 9th Street and 11th Street. Thus Defendants were the temporary occupiers of the premises encompassing Red River Street between 9th Street and 11th Street.

Of course, simply pleading the legal status of "control" or "temporary legal occupier" does not alone suffice; "the well-pleaded facts" must make the allegation of control a plausible one. *Iqbal*, 556 U.S. at 679.

The sole factual basis for the plaintiffs' control allegation is that the right-of-way permit equipped the SXSW defendants with legal control of the 1000 block. Yet when an "allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). So it is here. The right-of-way permit itself (attached to the complaint) contains an express qualification such that "[a]ll traffic controls must be provided in accordance with the approved traffic control plan." The

No. 17-50674

City-approved traffic control plan (likewise attached) then left the 1000 block open to regular vehicular traffic. The plaintiffs make no effort to reconcile their allegation of control with the permit's contingent-but-unexecuted delegation.

Without a plausible allegation that the City delegated control of the 1000 block, we arrive back at the usual course of things—in which the City controls its open streets. *Compton*, 899 S.W.2d at 226–27. Under those circumstances, Texas law generally imposes no duty on a land occupier to prevent injury to those on an adjacent city street.[4] *E.g.*, *Dixon*, 874 S.W.2d at 763 ("Because the accident occurred on a public road outside the control of the [defendant], the [defendant] owed no legal duty to" the victim.). The district court was therefore correct to dismiss the negligence and premises-liability claims against the SXSW defendants for lack of duty, and we need not reach any alternative grounds for dismissal.

*2. Negligence Per Se*

In addressing the plaintiffs' negligence per se claim, the district court skipped the threshold duty question and dismissed for another flaw: failure to allege any violation of a codified standard of conduct. Again, we agree.

Under Texas law, "[n]egligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). According to the plaintiffs, the relevant standard of conduct here comes from four traffic-control

---

[4] We do note a line of Texas cases recognizing a limited exception to this general rule: when a landowner's property itself becomes a "dangerous agency" on an adjacent roadway. *See*, *e.g.*, *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981) (wall of building fell onto city street); *Atchison v. Tex. Pac. Ry.*, 186 S.W.2d 228, 229 (Tex. 1945) (smoke from fire drifted across adjacent road). On top of being factually different from our case, the plaintiffs do not raise the dangerous-agency exception on appeal and thus abandon it.

7

manuals: (1) the Federal Manual on Uniform Traffic Control Devices (MUTCD); (2) the Texas MUTCD; (3) the City of Austin Transportation Criteria Manual; and (4) the 804 Series Standard, adopted by the City. Specifically, the plaintiffs cited portions of the manuals that either emphasize pedestrian safety in generic terms or identify the utility of the water-filled barriers that the plaintiffs say should have been used. Taken together, the plaintiffs pleaded, "[t]he abundance of traffic control standards, manuals and guidelines that establishes best practices makes SXSW's failure to deploy adequate traffic control measures inexcusable."

But nowhere does the complaint identify any provision that requires water-filled barriers for a temporary street closure. Said in terms of negligence per se, nowhere do the plaintiffs allege an actual breach of the various manuals. *See Mo. Pac. R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977) (explaining that negligence per se arises only when "the Legislature has declared that a particular act shall not be done"). In fact, one of the plaintiffs' own exhibits (the City's Transportation Criteria Manual) countenances the very Type-III barriers the SXSW defendants employed: "Type III Barricades are intended to be used in temporary traffic control zones for which sections of the roadway will be closed to traffic." As a consequence, the plaintiffs have failed to plead any facts making plausible their allegation of negligence per se, and the district court was correct to dismiss that claim.

*3. Implied Warranty*

The district court properly dismissed the plaintiffs' implied-warranty claim. Texas courts have rejected an implied warranty to make a premises safe (something duplicative of ordinary premises liability). *E.g.*, *Lively v. Adventist Health Sys./Sunbelt, Inc.*, No. 2-02-418-CV, 2004 WL 1699913, at \*5 (Tex. App.—Fort Worth July 29, 2004, no pet.). And even if the question remained

undecided, it would not be up to us to "create . . . state law." *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000) (quotations omitted).

### 4. Public Nuisance

Finally, the district court was correct to dismiss the plaintiffs' public-nuisance claim. Under Texas law, when public nuisance is alleged "only by reason of the negligent manner in which [the defendant's conduct] is performed or permitted, no right of recovery is shown independently of the existence of negligence." *King v. Columbian Carbon Co.*, 152 F.2d 636, 638–39 (5th Cir. 1945) (quotations omitted). The plaintiffs ground their public-nuisance claim in negligence alone, and the former fails for the same reason as the latter. *Supra* § III.A.1.

## B.  The City

The district court dismissed the negligence and premises-liability claims against the City for lack of legal duty, holding that Owens's criminal conduct was not reasonably foreseeable under Texas law. As we will explain below, the district court was right to do so. But the City lengthens our analytical journey by raising a jurisdictional governmental-immunity defense for the first time on appeal. *See Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) (explaining that immunity is "jurisdictional" and "can be raised at any stage of the proceedings").

### 1. Governmental Immunity

In Texas, governmental immunity encompasses both "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). The plaintiffs' argument against immunity is two-pronged: (1) the City engaged in a proprietary function for which it retains no immunity and (2) alternatively, the Legislature waived immunity here.

No. 17-50674

In Texas, "[a] municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." *Id.* at 343. The Texas Legislature has spelled out certain activities that qualify as governmental. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a). Among those activities are: (a)(1) police and fire protection and control; (a)(20) warning signals; (a)(21) regulation of traffic; and (a)(31) maintenance of traffic signals, signs, and hazards. *Id.* § 101.0215(a). However you characterize the City's alleged involvement in controlling traffic for the festival, it fits comfortably among those enumerated governmental functions.[5]

Proprietary actions aside, a municipality can nonetheless be liable when the Legislature waives immunity. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012). The plaintiffs rely on one such waiver here: "A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property *if the governmental unit would, were it a private person, be liable* to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2) (emphasis added). Because this waiver is contingent on ultimate tort liability, the City's immunity defense brings us right back to what the district court evaluated: whether the plaintiffs pleaded a valid claim.

### 2. Negligence and Premises Liability

"[C]rime may be visited upon virtually anyone at any time or place, but criminal conduct of a specific nature at a particular location is never foreseeable merely because crime is increasingly random and violent and may

---

[5] Contrary to the plaintiffs' suggestion, the fact that the City profits from SXSW does not diminish the governmental nature of its actions. *See Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 356–57 (Tex. App.—San Antonio 2000, pet. denied) (explaining that a city's motives are irrelevant when the conduct falls under an enumerated governmental function).

possibly occur almost anywhere, especially in a large city." *Timberwalk Apartments, Partners v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (alterations in original and quotations omitted). In turn, a Texas premises owner has a duty to protect against third-party crime only "if [the owner] knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Id.* (quotations omitted). We assess foreseeability (duty) as a question of law. *Id.*

Texas has two frameworks for proving foreseeability in a case like this one. The first is the oft-applied *Timberwalk* test, which requires "evidence . . . [of] specific previous crimes on or near the premises." *Id.* (quotations omitted). More precisely, *Timberwalk* asks "whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them." *Id.* at 757. Courts refer to these considerations—recency, proximity, frequency, similarity, and publicity—as the *Timberwalk* factors.

The second framework for proving foreseeability is a narrow one outlined in *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762 (Tex. 2010). *Del Lago* did not involve evidence of specific, prior crimes but rather found a duty to intervene when a premises owner had "actual and direct knowledge" of "imminent" criminal conduct. *Id.* at 769 (resort staff observed two intoxicated groups become increasingly hostile before a brawl broke out). In finding foreseeability, *Del Lago* cited the "nature and character of the premises" and "immediately preceding conduct" as relevant factors. *Id.* at 768–69. But importantly, *Del Lago* made explicit that "in situations where the premises owner has no direct knowledge that criminal conduct is imminent," *Timberwalk* remains the relevant test. *Id.* at 768.

11

No. 17-50674

We agree with the district court that *Del Lago* is inapplicable here, and the plaintiffs do not suggest otherwise with much vigor. The plaintiffs' Third Amended Complaint does not come close to alleging that the City had "actual and direct knowledge" of Owens's "imminent" crime in particular. *Del Lago* tells us, then, that the plaintiffs must go about proving foreseeability by way of *Timberwalk*.[6] *Id.*

The plaintiffs sought to meet their burden under *Timberwalk* through: (1) specific incidents; (2) general statistics about collisions and drunk driving during the SXSW festival; and (3) the City's pre-festival, subjective awareness of the possibility of an event like the one that killed Craenmehr.

In all, the plaintiffs cited twelve specific incidents, spanning nearly two decades and across multiple states.[7] At the outset, *Timberwalk*'s recency and proximity factors cut the plaintiffs' list in half. First, we limit our review to those crimes occurring within a "short time period," something *Timberwalk* implicitly equated with a three-to-four-year span. 972 S.W.2d at 758 & n.40. And second, *Timberwalk* requires "that other crimes have occurred on the property or in its immediate vicinity," something we assume to cover, at the very most, in-city crimes. *Id.* at 757.[8]

The remaining six incidents primarily involve intoxicated drivers, pedestrian collisions, or both—that much they have in common with Owens's

---

[6] Reading narrowly from *Del Lago*, the plaintiffs insinuate that they can show foreseeability based *only* on the "nature and circumstances" of the alcohol-heavy SXSW environment—that is, without establishing either *Timberwalk*'s prior, specific crimes or *Del Lago*'s direct knowledge of imminent criminal conduct. We cannot find any Texas case sanctioning such an approach; indeed, *Del Lago* itself stands firmly in the way. 307 S.W.3d at 768.

[7] The district court assumed publicity, and the City does not contest it.

[8] One could argue that Texas law requires a narrower scope—perhaps a shorter time frame limited to Austin's downtown sector. Ultimately, we need not settle that debate here because the plaintiffs do not satisfy *Timberwalk* even under the broader scope we employ.

crime. But while the plaintiffs are correct that those "prior crimes need not be identical" under *Timberwalk*, they are mistaken to equate a shared injury (car crash) or label (drunk driving) with sufficient similarity. *Id.* at 758. Instead, *Timberwalk* requires that "[t]he previous crimes . . . be sufficiently similar to the crime in question as to place the landowner on notice of the *specific danger*." *Id.* (emphasis added).

Texas law instructs that such a similarity comparison gauges both the manner and severity of the crimes. *Bos v. Smith*, No. 16-0341, ___ S.W.3d ____, 2018 WL 2749714, at *8 (Tex. June 8, 2018) ("The key is whether the behavior at issue is so similar in character and severity to what came before as to be foreseeable, or instead is so 'extraordinarily unlike' prior conduct that it could not reasonably have been anticipated.") (footnotes omitted). For instance, the Supreme Court has held that ten violent robberies on the actual premises did not make a murderous robbery foreseeable because the past crimes were too infrequent and too dissimilar in their methodology and result. *Trammell Crow*, 267 S.W.3d at 17. And though the Court has not yet applied a *Timberwalk* analysis to a vehicular crime, we find a useful comparator in the context of intruder-perpetrated assault. *Timberwalk* explained that repeated burglaries can make such attacks foreseeable, whereas "a spate of domestic violence," despite inflicting a similarly assaultive injury, "does not portend third party sexual assaults or robberies." 972 S.W.2d at 758. Why? Because burglary puts a premises owner on notice of a specific threat to security—criminals infiltrating the residence—that domestic violence does not. *See id.* ("If a burglar may enter [an apartment], so may a rapist.") (alterations in original and quotations omitted). Owens's crime represents an analogous danger: a

13

driver knowingly bypassing a barrier and infiltrating a closed city street. Yet none of the Austin-based incidents bear that similarity.[9]

Furthermore, even before *Timberwalk*, Texas courts had long recognized a fundamental difference between "slight deviations from the traveled roadway" or "momentary loss of control" and the "loss of entire control and direction of" a vehicle. *E.g. City of Dallas v. Maxwell*, 248 S.W. 667, 671 (Tex. Comm'n App. 1923, holding approved). Owens's crime, a quadruple murder, is an extreme version of the latter, placing it "within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable." *Id.*

Nor do the plaintiffs' statistics—153 pedestrian collisions and 171 arrests for drunk driving within a five-year span—render Owens's crime foreseeable. Abstract statistics are an ill fit for *Timberwalk*'s threshold of "specific" and "similar" crimes. 972 S.W.2d at 756–57; *see also Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 147 (Tex. App.—Dallas 2014, pet. denied) (disregarding statistics in part because of an absence of details). This case illustrates why: The plaintiffs made no allegation of (1) whether any of the pedestrian collisions were indeed criminal or (2) whether any of the drunk-driving arrests involved collisions. Without that information, the plaintiffs have yet to point to a single recent, Austin-specific crime resembling Owens's, much less a repetitive pattern.

Finally, we address the City's pre-festival discussions. Because the City discussed the use of water-filled barriers and planned for emergency response in the event of a car plowing through a crowd, the argument goes, the City "foresaw" the crime that materialized. The argument is, however, contrary to

---

[9] Telling is the fact that the plaintiffs' complaint had to reach as far back as a decade and as far away as California and Indiana to find two occasions where vehicles bypassed barriers and careened into crowds.

*Timberwalk*, which was premised on the very notion that crime "may possibly occur almost anywhere." 972 S.W.2d at 756. A premises owner vocalizing that truism—*i.e.*, "hypothesiz[ing] that criminal activity . . . could occur" or "acknowledg[ing] that criminal activity could occur at any time"—"is neither evidence of nor an admission of foreseeability." *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 920 (Tex. App.—Houston [14th Dist.] 2009, no pet.). *Timberwalk* instead made a calculated decision to couch foreseeability in a particular manner: "For a landowner to foresee criminal conduct on property, there must be evidence that other crimes have occurred on the property or in its immediate vicinity." 972 S.W.2d at 757. Were the law as the plaintiffs suggest, a premises owner would be altogether discouraged from planning for a worst-case scenario (no matter the likelihood), lest mere planning create a duty where none existed. Texas courts have gone a different path. *See Allen v. Connolly*, 158 S.W.3d 61, 67 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

In sum, the City's immunity is not waived because the plaintiffs have failed to state a valid premises claim. TEX. CIV. PRAC. & REM. CODE § 101.021(2). We thus affirm the judgment of dismissal in favor of the City, if on nominally different immunity grounds.

AFFIRMED.

No. 17-50674

JAMES E. GRAVES, JR., Circuit Judge, dissenting in part:

I disagree with the majority's conclusion that Steven Craenmehr's family (Smit) is unable to establish foreseeability with regard to the City. I also disagree with the majority regarding the City's waiver of immunity. Instead, because Smit pleaded a valid claim, I would reverse the district court's judgment of dismissal as to the City. Thus, I respectfully dissent in part.

As the majority states, we look to the *Timberwalk* factors to determine foreseeability. *See Timberwalk Apartments, Partners v. Cain*, 972 S.W.2d 749, 757 (Tex. 1998) (We consider "whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them.").

Here, Smit alleges 12 specific incidents of similar crashes. The majority dismisses half of those based on *Timberwalk's* recency and proximity factors. However, regardless of whether those specific incidents were outside of a three-to-four year span or outside the city limits, those incidents still count toward the subjective awareness or publicity factor. Further, some of those incidents involved drivers driving through barricades or into otherwise closed areas.

Moreover, Smit also alleges that, during the period from 2009-2014, in downtown Austin during SXSW, there were at least 153 collisions between motorists and pedestrians/bicyclists, 356 arrests for public intoxication, and 171 arrests for drunk driving, along with various other incidents. This is sufficient to establish that it was foreseeable that drunken people and vehicles were consistently not where they were supposed to be every year in the festival zone during SXSW and that numerous collisions had resulted. This is also sufficient to establish that the City had subjective awareness of the possibility of an event like the one that killed Craenmehr.

16

No. 17-50674

Additionally, it is impossible to conclude that these incidents are "so 'extraordinarily unlike' prior conduct that it could not reasonably have been anticipated." *Bos v. Smith*, ___ S.W.3d ____, 2018 WL 2749714, at *8 (Tex. June 8, 2018) (quoting *Trammell Crow Cent. Tex., Ltd. v. Gutierrez,* 267 S.W.3d 9, 17 (Tex. 2008).

To survive a motion to dismiss, Smit must only allege sufficient facts, "accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal marks and citation omitted). Smit has done that. Further, as the majority acknowledges, waiver of immunity is contingent on tort liability. TEX. CIV. PRAC. & REM. CODE § 101.021(2). Because Smit has pleaded a valid claim, the City's immunity defense is waived.

For these reasons, I would reverse the district court's dismissal of the City at this stage. Thus, I respectfully dissent in part.